1  ANTHONY M. BARNES, SBN 199048
Email: amb@atalawgroup.com
2  JASON R. FLANDERS, SBN 238007
Email: jrf@atalawgroup.com
3  AQUA TERRA AERIS (ATA) LAW GROUP
4030 Martin Luther King Jr. way
4  Oakland, CA 94609
Telephone: (917) 371-8293
5

6  Attorney for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION
7  ALLIANCE, a non-profit corporation

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11  CALIFORNIA SPORTFISHING PROTECTION       Case No.: 5:20-cv-08435-VKD
ALLIANCE, a non-profit corporation,
12                                            **STIPULATION TO DISMISS**
**PLAINTIFFS' CLAIMS WITH**
13            Plaintiff,                      **PREJUDICE, RETAINING**
**JURISDICTION OVER SETTLEMENT;**
14      vs.                                   ~~[PROPOSED]~~ **ORDER GRANTING**
**DISMISSAL OF CLAIMS WITH**
15  STERICYCLE, INC., a Delaware corporation, **PREJUDICE, RETAINING**
**JURISDICTION OVER SETTLEMENT**
16
17            Defendant.                      **(Federal Water Pollution Control Act, 33**
**U.S.C. §§ 1251 et seq.)**
18
19                                            Courtroom 2, 5th Floor
20                                            Robert F. Peckham Federal Building
280 South 1st Street
21                                            San Jose, CA 95113
Judge Virginia K. DeMarchi
22

23

24

25

26

27

28

**PLEASE TAKE NOTICE THAT:**

WHEREAS, on September 25, 2020, Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA") provided Stericycle, Inc. ("Defendant" or "Stericycle") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365;

WHEREAS, on November 30, 2020, CSPA filed its complaint against Stericycle in this Court, which incorporated by reference all of the allegations contained Plaintiff's Notice;

WHEREAS, CSPA and Stericycle (the "settling parties"), through their authorized representatives and without either adjudication of CSPA's claims or admission by Stericycle, of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Settlement Agreement entered into by and between CSPA and Stericycle, is attached hereto as Exhibit A and fully incorporated by reference.

WHEREAS, on April 29, 2021, Plaintiff filed a Notice of Settlement and requested the Court not enter any order regarding the Settlement Agreement until a mandatory period for comment by the United States had passed pursuant to United States Code, title 33, section 1365(c)(3) and Code of Federal Regulations, title 40, section 135.5; and

WHEREAS, on April 30, 2021, Plaintiff filed a Notice of Commencement of 45-Day Review Period, which advised the Court that the United States had acknowledged receipt of the Settlement Agreement and would notify the Court of any objections to the Settlement Agreement by June 14, 2021; and

WHEREAS, Plaintiff submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. Environmental Protection Agency and the U.S. Department of Justice (the "federal agencies") for a 45-day statutory review period, consistent with 33 U.S.C.§ 135.5, and as noted directly above, that review period has completed.  The federal agencies have submitted correspondence to the Court on June 14, 2021, indicating that they have no objection to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and greed to that the settling parties

1    request an order from this Court (1) approving the settlement agreement; (2) dismissing with

2    prejudice CSPA's claims as to STERICYCLE, INC., as set forth in the Notice and Complaint, and

3    (3) concurrently retaining jurisdiction over this matter or purposes of dispute resolution and

4    enforcement of the Settlement Agreement.

5
     Dated:  June 18, 2021                    AQUA TERRA AERIS LAW GROUP LLP
6

7                                             By: _s/Anthony Barnes_____
8                                                 Anthony M. Barnes
                                                  Attorneys for Plaintiff CALIFORNIA
9                                                 SPORTFISHING PROTECTION ALLIANCE

10   Dated:  June 18, 2021                    STOEL RIVES LLP

11

12                                            By: _s/Michael Mills_____
13                                                Michael N. Mills
                                                  Attorneys for Defendant
14                                                STERICYCLE, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[PROPOSED] ORDER**

2    Good cause appearing, and the parties having stipulated and agreed, IT IS HEREBY

3    ORDERED that the settlement agreement is approved, and pursuant to Federal Rules of Civil

4    Procedure 41(a)(2), CALIFORNIA SPORTFISHING PROTECTION ALLIANCE's claims as to

5    STERICYCLE, INC., as set forth in the Notice and Complaint, are dismissed with prejudice, and

6    the Court shall retain jurisdiction over this matter for purposes of dispute resolution and

7    enforcement of the Settlement Agreement, attached hereto as Exhibit "A" and fully incorporated by

8    reference herein.

9    PURSUANT TO STIPULATION, IT IS SO ORDERED.

10

11

Dated:   June 18        , 2021

12

13    _Virginia K. DeMarchi_
      MAGISTRATE JUDGE VIRGINIA K. DeMARCHI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT A

MICHAEL N. MILLS (SB #191762)
michael.mills@stoel.com
SARAH M. TAYLOR (SB #296520)
sarah.taylor@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

*Attorneys for Defendant*
STERICYCLE, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>STERICYCLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 5:20-cv-08435-VKD<br><br>**SETTLEMENT AGREEMENT**<br><br><br>Magistrate Judge Virginia DeMarchi<br>Courtroom 2, 5th Floor<br>San Jose Courthouse<br>280 South 1st Street<br>San Jose, CA 95113 |

**<u>SETTLEMENT AGREEMENT</u>**

The following Settlement Agreement ("Agreement") is entered into by and between Plaintiff California Sportfishing Protection Alliance and Defendant Stericycle, Inc.  The parties entering into this Agreement are collectively referred to as the "Parties."

**WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives;

**WHEREAS**, Stericycle, Inc. ("Stericycle" or "Defendant") owns and operates an industrial facility at 1551 Shelton Drive, Hollister, CA 95023 ("Facility"), WDID No. 335I026019;

**WHEREAS**, the industrial activities at the Facility consist primarily of the treatment of biomedical waste;

**WHEREAS,** the Facility is currently categorized under Standard Industrial Classification ("SIC") Code 4953—refuse systems hazardous waste facilities and landfills (Landfills and Land Application Facilities or Refuse Systems but in fact Stericycle treats biomedical waste at the Facility, not hazardous waste under the Resource Conservation and Recovery Act);

**WHEREAS**, on March 6, 2019, prior to the allegations raised in this matter, the Central Coast Regional Water Quality Control Board ("Regional Board") inspected the Facility, found no violations of the Industrial Storm Water Permit, and CSPA disputes the Regional Board's conclusions;

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, CSPA alleges that Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on September 25, 2020, CSPA issued a Notice of Violations and Intent to File

1

Suit ("Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Board, and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act, the General Permit, and the Water Quality Order 97-03-DWQ, as amended by Water Quality Order 2014-0057-DWQ, at the Facility;

**WHEREAS**, Stericycle denies all of the violations contained in the Notice;

**WHEREAS**, on November 30, 2020, CSPA filed a complaint against Stericycle in the U.S. District Court for the Northern District of California ("District Court"), Civil Case No. 5:20-cv-08435-VKD ("Complaint");

**WHEREAS**, CSPA's complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including the San Benito River and Monterey Bay ("Receiving Waters");

**WHEREAS**, Stericycle denies any fault, wrongdoing, or liability regarding all claims and alleged violations in the Complaint, as well as the Notice; and

**WHEREAS**, the Parties have agreed that it is in their mutual interest to resolve in full CSPA's allegations in the Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW, THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AS FOLLOWS:**

**I.    SETTLEMENT AGREEMENT TERM**

    **A.    Effective Date and Term of Settlement Agreement**

        1.    <u>Effective Date</u>.  The "Effective Date" shall mean the last day for the Federal Agencies to comment on the Agreement (i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Agreement), or the date on which the Federal Agencies provide notice that no further review is required, whichever occurs earlier.

        2.    <u>Term</u>.  The "Term" of this Agreement shall run from the Effective Date until October 1, 2023 ("Termination Date"), unless dispute resolution has been invoked or is pending

regarding an Action Plan required by Section III.D of this Agreement, in which case the Term will end upon the completion of the dispute resolution process; or unless the early termination/permit status modification provision contained in Paragraph 26 of this Agreement is triggered.

## II.    COMMITMENTS OF CSPA

3.    <u>Submission of Agreement to Federal Agencies</u>.  Within five (5) business days of the mutual execution of this Agreement, CSPA shall do the following:

a.    Submit this Agreement to the United States Department of Justice ("DOJ") for the statutory forty-five (45) day agency review period set forth in 33 U.S.C. § 1365(c). In the event that the DOJ objects to this Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ within thirty (30) days.

b.    Submit a Notice of Settlement to the District Court.

4.    <u>Case Dismissal</u>.  Within seven (7) days of the Effective Date, CSPA shall file with the District Court a Stipulation and Order, signed by both Parties, providing that:

a.    The Complaint and all claims against Stericycle shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) (the date of entry of the Order to dismiss shall be referred to herein as the "Court Approval Date"); and

b.    The District Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Agreement, which shall be attached thereto and fully incorporated by reference, through the Termination Date.  Nothing in this Agreement shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Agreement.

## III.    COMMITMENTS OF STERICYCLE

### A.    Storm Water Pollution Control Best Management Practices

5.    <u>Implementation of Best Management Practices ("BMPs") and BMP Modifications</u>: Stericycle shall not unilaterally discontinue or modify any of the BMPs described below without prior notice to CSPA.  CSPA agrees to provide comments or proposed revisions, if any, to any such discontinuance or modification within fifteen (15) days following receipt of notice

of same. Stericycle has already implemented or shall implement within forty-five (45) days of the Effective Date, the following BMPs at the Facility:

a.    Good Housekeeping:  pick up trash and debris daily, and regularly arrange for a professional street sweeper to sweep all paved areas at the Facility at least six times during the wet[1] season; document each street sweeping occurrence, including the date, name of contractor, and photos/observations, as necessary; implement sweeping procedures for the following areas:  solid waste compactor, treated waste, temporary roll bin storage, empty roll bin storage, and pallet storage.

b.    Inspections: observe roof and outdoor areas frequently for debris, waste, spills, or leaks.

c.    Minimize and prevent material tracking throughout the Facility.

d.    Pave roll bin area to help prevent material tracking throughout the Facility (completed August 2020).

e.    Routinely maintain equipment and storage areas and maintain pavement in impervious areas.

f.    Rake and sweep the Facility for leaves, bark, or branches from trees.

g.    Train employees on conducting inspections, handling of leaks and spills, implementation of BMPs, and keeping correct records of observations and inspections.

h.    Install drop inlet filters in Facility drains prior to the 2021-2022 wet season and replace, maintain, or clean those drop inlet filters as necessary throughout the 2021-2022 and 2022-2023 wet seasons.

i.    Visual Observations, Employee Training, and Modifications of the Storm Water Pollution Prevention Plan: 1) Stericycle shall conduct visual observations at each discharge location in accordance with the General Permit; 2) Stericycle shall conduct employee training in accordance with the General Permit sections I.H and XI; and 3) No later than July 31, 2021, Stericycle shall update the Facility's Storm Water Pollution Prevention Plan ("SWPPP") to

---

[1] The "wet season" includes October 1st through May 31.

4

include the BMPs listed above to the extent not already included in the current SWPPP, and agrees to meet and confer in good faith regarding the contents of sufficiency of the SWPPP during the Term of this Agreement. Stericycle shall also further revise the SWPPP during the Term of this Agreement should there be any material changes in BMPs, storm water discharge points, or Facility operations.

6. <u>Best Available Technology Economically Achievable ("BAT")/Best Conventional Pollutant Control Technology ("BCT") and Benchmark-Based Limits</u>. Contaminants in the Facility's industrial storm water discharges shall be reduced by Best Management Practices ("BMPs") required under the Permit and in this Agreement to meet BAT/BCT requirements. Contaminants in storm water discharged from the Facility shall not exceed the limits in Table 1, except as provided herein. After October 1, 2021, the exceedance of any three (3) Table 1 limits of the same analyte for storm water samples collected during either the 2021-2022 reporting year or the 2022-2023 reporting year from the Facility shall trigger the Action Plan requirements of Section III.D of this Agreement for that year unless the discharge occurs during a rain event above the design standard stated in the General Permit. Data collected in the 2021-2022 reporting year will not carry over to the 2022-2023 reporting year.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | EPA Benchmark |
| Oil & Grease | 15 mg/L | EPA Benchmark |
| Silver | 0.0183 mg/L | EPA Benchmark |
| Arsenic | 0.15 mg/L | EPA Benchmark |
| Ammonia | 2.14 mg/L | EPA Benchmark |
| Cyanide | 0.022 mg/L | EPA Benchmark |
| Selenium | 0.005 mg/L | EPA Benchmark |
| Lead | 0.262 mg/L | EPA Benchmark |
| Mercury | 0.0014 mg/L | EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | EPA Benchmark |
| pH | 6.0-9.0 s.u. | EPA Benchmark |

**B.    Sampling at the Facility**

7. Starting October 1, 2021, Stericycle shall collect samples from all of the

1    Facility's sampling points under its Stormwater Pollution Prevention Plan ("SWPPP") from four (4)

2    Qualified Storm Events (each a "QSE"), as set out by the General Permit and those conditions

3    stated therein.  A QSE is a precipitation event that: (1) produces a discharge for at least one

4    drainage area; and (2) is preceded by 48 hours with no discharge from any drainage area.  Fewer

5    than two QSE samples collected in the first half of a reporting year shall be compensated by

6    collecting an additional sample from an additional QSE during the second half of a reporting year,

7    until a total of four samples are collected for any reporting year under this Agreement.  The

8    analytical results from the samples collected during the four (4) QSEs required by this Agreement

9    shall be used to demonstrate compliance with this Agreement.  For purposes of this Agreement, a

10   sampling event includes any storm water discharge occurring during the Facility's scheduled

11   operating hours, or, if storm water is stored onsite prior to discharge, whenever storm water is

12   released outside these hours.  Stericycle shall analyze the samples for the constituents identified in

13   Table 1, above.  Defendant shall request that the laboratory use the analytical methods specified in

14   the General Permit for each contaminant.

15        **C.    Action Plan**

16        8.    Stericycle agrees to submit an Action Plan to CSPA that complies with the

17   requirements below, in the event that:

18            a.    Stericycle receives a final laboratory report(s) that triggers the

19   requirement for an Action Plan under Paragraph 6 of this Agreement.  The Action Plan shall include

20   all constituents that triggered the requirement for the Action Plan, and shall be submitted no later

21   than thirty (30) days after the Facility receives the laboratory results for the fourth, or final if there

22   is not a fourth due to lack of QSEs, storm water sample in the reporting year, the last storm water

23   sample shall be the last sample taken on or before June 30; and

24            b.    If Stericycle fails to collect and analyze samples from four (4) QSEs

25   as required in Paragraph 7, provided that four (4) QSEs occur in the reporting year.  Such Action

26   Plan shall be submitted on or before July 30.

27        9.    In no event shall more than one Action Plan be required per reporting year.

28

6

10.     CSPA agrees to provide comments or proposed revisions, if any, to a submitted Action Plan within fifteen (15) days following receipt of same.  Stericycle shall consider each of CSPA's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with this Agreement.  Stericycle reserves the right to accept or reject any of CSPA's recommended revisions to an Action Plan following the meet and confer.  Should Stericycle reject any of CSPA's recommended revisions to an Action Plan, Stericycle shall provide CSPA a written explanation regarding any rejection of CSPA's recommended revisions to an Action Plan within twenty (20) days following the receipt of CSPA's recommended revisions to an Action Plan, or forty-five (45) days following the meet and confer of the Parties pursuant to Paragraph 18, if such meet and confer occurs.  Furthermore, the Parties agree to comply with the dispute resolution procedures set forth below if there are any continuing, unresolved disputes regarding an Action Plan.

11.     Each Action Plan submitted shall include at minimum:  (1) the identification of the pollutant(s) discharged in excess of the Table 1 limit(s); (2) an assessment of the source of each pollutant exceedance; (3) the identification of additional BMPs or maintenance of BMPs that will be implemented to achieve compliance with the Table 1 limit(s); and (4) time schedule(s) for implementation of the proposed BMPs.  The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 (prior to the start of the next wet season).  If BMPs are proposed that cannot reasonably be completed by October 1, then Stericycle shall inform CSPA of any implementation delays and the reasons for the delays and provide a general timeline to implement the BMPs.  Within forty-five (45) days after BMPs set forth in an Action Plan pursuant to this Agreement are implemented, Stericycle shall revise the Facility's Monitoring Implementation Plan ("MIP") and/or SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the MIP and/or SWPPP and shall notify CSPA that a copy of such revised SWPPP has been uploaded to the Stormwater Multiple Application and Report Tracking System ("SMARTS").

**D.     Compliance Monitoring and Reporting**

12.     <u>Site Inspection</u>.  Under the terms of this Agreement, in the event an

7

1   Exceedance Response Action ("ERA") Report is required and submitted by Stericycle following the

2   2021-2022 reporting year (July 1 through June 30), Stericycle shall permit CSPA's representatives

3   to perform one (1) physical inspection within the Term of this Agreement at the Facility during

4   scheduled Facility operating hours.  The site inspection will only be conducted in those areas of the

5   Facility subject to the General Permit.  CSPA shall provide Stericycle with fifteen (15) business

6   days' notice in advance of any site inspection, which shall occur on a date mutually agreed upon by

7   the Parties.  CSPA shall comply with all safety instructions provided by Stericycle during any site

8   inspection.  During the site inspection, a consultant hired by CSPA shall be allowed to inspect and

9   sample any storm water discharges that may occur, as well as logs, and take photos of non-

10  confidential processes that occur in areas subject to the General Permit.  The consultant must follow

11  all protocol and safety orders of the Facility, and all actions of the consultant related to such

12  sampling, including the sampling itself, must be overseen by the Facility General Manager (or

13  equivalent), and the Facility General Manager must accompany the consultant during the entire time

14  on the Facility.  All water quality sampling shall be conducted by a qualified sampler, with a split

15  sample provided to both Parties at the time of sampling.  CSPA shall provide Stericycle with a copy

16  of all sampling reports, photographs, and/or video within a reasonable time after the site inspection,

17  not to exceed fourteen (14) days after CSPA's receipt of any sampling reports from split samples,

18  and seven (7) days after the site inspection for photographs and/or video.

19          13.    <u>Document Provision</u>.  Under the terms of this Agreement, Stericycle shall

20  provide CSPA with an electronic mail notice of the submission of all documents, reports, and data it

21  has submitted electronically to the State Board SMARTS database or to the Regional Board, the

22  State Board, and/or any federal, state, or local agency, county, or municipality regarding storm

23  water quality or reporting.  Stericycle shall give such notice within two (2) business days of making

24  such submission.  Furthermore, any other correspondence related to storm water quality sent or

25  received by Stericycle from any federal, state, or local agency, county, or municipality, or sent by

26  Stericycle to any of the foregoing governmental agencies, shall be provided to CSPA via electronic

27  mail within five (5) business days of receipt by Stericycle.

28

14. <u>Compliance Monitoring</u>.  Defendant agrees to partially defray costs associated with CSPA's monitoring of Defendant's compliance with this Agreement in the amount of Three Thousand Dollars ($3000.00).  Such payments shall be made within forty-five (45) days of the Effective date and payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes, and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

**E.    Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

15. <u>Environmental Mitigation Payment</u>:  As mitigation of the Clean Water Act violations alleged in CSPA's Complaint, without admission of wrongdoing or misconduct on the part of Stericycle, Stericycle agrees to pay the sum of Twelve Thousand Dollars ($12,000.00) to the Rose Foundation for Communities and the Environment (the "Rose Foundation").  Within forty-five (45) days of the Effective Date, Stericycle shall make the mitigation payment directly to the Rose Foundation and send the payment via check to: The Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little.  The Rose Foundation shall provide notice to the Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

16. <u>Reimbursement of Fees and Costs</u>:  Defendant agrees to pay a total of Twenty-Seven Thousand Dollars Five Hundred ($27,500.00), within forty-five (45) days of the Effective date, to CSPA to partially reimburse CSPA for its reasonable investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter.  The payment shall be made payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes, and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

**IV.    DISPUTE RESOLUTION**

17. <u>Jurisdiction of Court</u>.  This Court shall retain jurisdiction over this matter for the Term of this Agreement for the purposes of enforcing its terms and conditions and adjudicating

9

all disputes among the Parties that may arise under the provisions of this Agreement.  The Court shall have the power to enforce this Agreement with all available legal and equitable remedies, including contempt.

18.    Meet and Confer.  Either Party to this Agreement may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

19.    Settlement Conference.  If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 18, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Northern District of California.  The Parties agree to request an expedited hearing schedule on the motion.

20.    In resolving any dispute arising from this Agreement before the District Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

**V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

21.    CSPA's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Agreement, CSPA, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Agreement.

22.    Defendant's Waiver and Release of CSPA. In consideration of the above, upon the Effective Date of this Agreement, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or

1   assigns, release CSPA, its officers and directors, from and waives all claims related to the 60-Day

2   Notice and/or the Complaint up to and including the Termination Date of this Agreement.

3           23.     Nothing in this Consent Decree limits or otherwise affects CSPA rights to

4   address or take any position that it deems necessary or appropriate in an informal or formal

5   proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative

6   body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit

7   or the Clean Water Act occurring or arising after the Termination Date of this Agreement.

8           24.     Waiver of California Civil Code § 1542. Upon the Effective Date of this

9   Agreement, the Parties further expressly waive any rights or benefits available to them under the

10  provisions of California Civil Code § 1542. The Parties acknowledge that they are familiar with

11  section 1542 of the California Civil Code, which provides:

12          A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
13          CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
            THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
14          MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
            DEBTOR.
15

16  While a Party may assert that California Civil Code section 1542 applies to general releases only,

17  and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights

18  or benefits they may have under California Civil Code section 1542 with respect to any other claims

19  against each other arising from, or related to, the allegations and claims as set forth in the Notice

20  Letter and/or the Complaint, up to and including the Termination Date of this Agreement.

21  **VI.     MISCELLANEOUS PROVISIONS**

22          25.     <u>No Admission of Liability</u>.  The Parties enter into this Agreement for the

23  purpose of avoiding prolonged and costly litigation.  Neither the Agreement nor any payment

24  pursuant to the Agreement shall constitute or be construed as a finding, adjudication, or

25  acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation

26  of any law, rule, or regulation.  The Defendant maintains and reserves all defenses it may have to

27  any alleged violations that may be raised in the future.

28          26.     <u>Early Termination/Permit Status Modification</u>.  If Stericycle should cease or

1   modify industrial operations at the Facility and file a Notice of Termination ("NOT"), Notice of

2   Non Applicability ("NONA"), or No Exposure Certification ("NEC"), or other notification under

3   the Industrial Storm Water Permit prior to the Termination Date of this Agreement, Stericycle shall

4   send CSPA a copy of the proposed NOT, NONA, NEC, or notice on the same day as its submittal to

5   the Regional Board.  If Plaintiffs object to this permit status modification notification, the dispute

6   resolution procedures herein may be invoked.  Within ten (10) days of the Regional Board's

7   approval of the NOT, NONA, NEC, or other modification, Stericycle shall notify CSPA in writing

8   of the approval and this Agreement shall terminate.  In the event a new successor or assign

9   continues similar industrial operations at the site after a NOT and assumes responsibility for

10  implementation of this Agreement pursuant to Paragraph 36, Stericycle shall notify CSPA within

11  ten (10) days of the transition.

12          27.     Counterparts.  This Agreement may be executed in any number of

13  counterparts, all of which together shall constitute one original document.  Telecopy and/or

14  facsimile copies of original signature shall be deemed to be originally executed counterparts of this

15  Agreement.

16          28.     Authority to Sign.  The undersigned representatives for CSPA and Defendant

17  each certify that s/he is fully authorized by the Party whom s/he represents to enter into this

18  Agreement.  A Party's signature to this Agreement transmitted by facsimile or electronic mail shall

19  be deemed binding.

20          29.     Construction.  The language in all parts of this Agreement shall be construed

21  according to its plain and ordinary meaning, except as to those terms defined in the Permit, the

22  Clean Water Act, or specifically herein.  The captions and paragraph headings used in this

23  Agreement are for reference only and shall not affect the construction of this Agreement.

24          30.     Full Settlement.  This Agreement constitutes a full and final settlement of this

25  matter.

26          31.     Integration Clause.  All agreements, covenants, representations, and

27  warranties, express or implied, oral or written, of the Parties concerning the subject matter of this

28  Agreement are contained herein.  This Agreement was made for the sole benefit of the Parties, and

no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

32.    Severability.  In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33.    Choice of Law.  The laws of the United States shall govern this Agreement or, where applicable, the laws of the State of California.

34.    Negotiated Agreement.  The Parties have negotiated this Agreement and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

35.    Modification of the Agreement.  This Agreement, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court.  Any request to modify any provision of the Agreement, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

36.    Assignment.  Subject only to the express restrictions contained in this Agreement, all of the rights, duties, and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

37.    Force Majeure.  A force majeure event is any event outside the reasonable control of Stericycle that causes a delay in performing tasks required by this Agreement that cannot be cured by due diligence.  Delay in performance of a task required by this Agreement caused by a force majeure event is not a failure to comply with the terms of this Agreement, provided that Stericycle notifies CSPA of the event; the steps that Stericycle will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to storm water quality resulting from delay in completing the task.

1    Stericycle will notify CSPA of the occurrence of a force majeure event as soon as

2 reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the event.

3 In such event, the time for performance of the task will be extended for a reasonable period of time

4 following the force majeure event.

5    By way of example and not limitation, force majeure events include:

6        a.    Acts of God, war, insurrection, or civil disturbance;

7        b.    Earthquakes, landslides, fire, and floods;

8        c.    Actions or inactions of third parties over which Stericycle has no

9 control;

10        d.    Unusually adverse weather conditions;

11        e.    Restraint by court order or order of public authority;

12        f.    Strikes; and

13        g.    Litigation, arbitration, or mediation that causes delay.

14    38.    Notice.  All notices required herein or any other correspondence pertaining to

15 this Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail

16 address(es) listed below or, if electronic mail is not feasible, then by certified U.S. mail with return

17 receipt, or by hand delivery to the following addresses:

18 If to Plaintiff:                          If to Defendant:

19 Anthony M. Barnes                          Michael N. Mills
   Aqua Terra Aeris Law Group LLP            Stoel Rives LLP
20 4030 Martin Luther King Jr. Way           500 Capitol Mall, Suite 1600
   Oakland, CA 94609                         Sacramento, CA 95814
21 amb@atalawgroup.com                        michael.mills@stoel.com

22
   With copies to:                           With copies to:
23 Bill Jennings, Executive Director          Kurt Rogers, Executive Vice President and
   California Sportfishing Protection Alliance General Counsel
24 3536 Rainier Avenue                        Stericycle, Inc.
   Stockton, CA 95204                         2355 Waukegan Road
25                                            Bannockburn, IL 60015
26                                            Kurt.Rogers@Stericycle.com

27 Notifications of communications shall be deemed submitted three (3) days after the date that they

28

1  are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via

2  email by the receiving party.  Any change of address or addresses shall be communicated in the

3  manner described above for giving notices.

4          39.      If for any reason the DOJ should decline to approve this Agreement in the

5  form presented, or the District Court should decline to enter the Request for Dismissal with

6  Prejudice of the Complaint with continuing jurisdiction, the Parties shall use their best efforts to

7  work together to modify the Agreement within thirty (30) days so that it is acceptable to the DOJ or

8  the District Court.  If the Parties are unable to modify this Agreement in a mutually acceptable

9  manner that is also acceptable to the DOJ and/or the District Court, this Agreement shall

10 immediately be null and void as well as inadmissible as a settlement communication under Federal

11 Rule of Evidence 408 and California Evidence Code section 1152.

12          IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first

13 set forth below.

14 AGREED AS TO CONTENT:

15

16 Dated: _____, 2021        By: _____
            April 27

17                                          Bill Jennings, Executive Director
                                           California Sportfishing Protection Alliance

18

19 Dated: _____, 2021        By: _____

20                                          Shellie Shellabarger, Senior Vice
                                           President, Field Operations

21                                          Stericycle, Inc.

22

23

24 APPROVED AS TO FORM:

25
            April 27
26 Dated: _____, 2021        By: _____

27                                          Anthony M. Barnes
                                           Attorney for Plaintiff

28                                          California Sportfishing Protection Alliance

15

1    are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via

2    email by the receiving party.  Any change of address or addresses shall be communicated in the

3    manner described above for giving notices.

4          39.     If for any reason the DOJ should decline to approve this Agreement in the

5    form presented, or the District Court should decline to enter the Request for Dismissal with

6    Prejudice of the Complaint with continuing jurisdiction, the Parties shall use their best efforts to

7    work together to modify the Agreement within thirty (30) days so that it is acceptable to the DOJ or

8    the District Court.  If the Parties are unable to modify this Agreement in a mutually acceptable

9    manner that is also acceptable to the DOJ and/or the District Court, this Agreement shall

10   immediately be null and void as well as inadmissible as a settlement communication under Federal

11   Rule of Evidence 408 and California Evidence Code section 1152.

12       IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first

13   set forth below.

14   AGREED AS TO CONTENT:

15

16   Dated: _____, 2021       By: _____

17                                    Bill Jennings, Executive Director

18                                    California Sportfishing Protection Alliance

19   Dated: 4/28/ , 2021            By: _____

20                                  Shellie Shellabarger, Senior Vice

21                                  President, Field Operations

22                                  Stericycle, Inc.

23

24   APPROVED AS TO FORM:

25   Dated: _____, 2021       By: _____

26                                    Anthony M. Barnes

27                                    Attorney for Plaintiff

28                                    California Sportfishing Protection Alliance

1    Dated: April 29          , 2021              By: _____
                                                      Michael N. Mills
2                                                     Attorney for Defendant
                                                      Stericycle, Inc.
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT                                      5:20-cv-08435-VKD
110652789.1 0045569-00005